IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| COLONIAL RIVER WEALTH ADVISORS, LLC,<br>      Plaintiff,<br><br>v.<br><br>CAMBRIDGE INVESTMENT RESEARCH, INC., *et. al.*<br>      Defendants. | Civil Action No. 3:22cv717 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Jayne W. Di Vincenzo's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) ("Motion to Dismiss") (ECF No. 23). The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will grant the Motion to Dismiss (ECF No. 23) and dismiss all counts of the Amended Complaint leveled against Defendant Di Vincenzo.

**I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY[1]**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require the acceptance of any unreasonable inferences or a plaintiff's legal conclusions. *Id*. Additionally, a

---

[1] Unlike when addressing a typical motion to dismiss, the facts and procedural history in this case go hand-in-hand, and so the Court presents them as one cohesive narrative for ease of reference and analysis.

court may consider any documents attached to the complaint "or to the motion to dismiss so long as they are integral to the complaint and authentic." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).  Finally, courts may also consider facts that are a matter of public record or have been judicially noticed. *See Space Tech. Dev. Corp. v. Boeing Co.*, 209 F. App'x 236, 239 (2006) (adding that a court may "not consider anything else").  Applying these standards, the Court construes the operative facts to be as follows.

Plaintiff Colonial River is a Virginia company providing investment advice and other financial services.  (Am. Compl. ¶ 9, ECF No. 12.)  Its sole member is Devin Garofalo.  (*Id*.)  Defendant Jayne Di Vincenzo is an investment advisor who formerly operated Lions Bridge Financial Advisors, Inc. ("Lions Bridge"), an investment advisor and securities brokerage business.  (*Id*. ¶¶ 9, 15.)   In or around September 2019, Di Vincenzo received information that Garofalo and Colonial River might be interested in purchasing Lions Bridge (the "Business").  (*Id*. ¶ 20.)  On February 18, 2020, Garofalo, Colonial River, Di Vincenzo, and Lions Bridge entered into an Asset Purchase Agreement ("APA") wherein Di Vincenzo and Lions Bridge (collectively, "Sellers") sold all of the Business's assets to Garofalo and Colonial River (collectively "Purchasers").  (*Id*. ¶ 21.)  The deal closed on March 3, 2020, when Colonial River wired $1.3 million to Di Vincenzo.  (*Id*. ¶ 22.)

Among other provisions, the APA transferred Sellers' client accounts and business goodwill to Purchasers, including "[a]ll customer relationships, consumer lists, expiration lists, broker of record rights, rights to renew and related intangible rights and goodwill of the Business, including without limitation the Personal Goodwill . . . ." (*Id*. ¶ 24.)  Sellers also relinquished their intellectual property rights in the Business, including any rights in the Lions Bridge name.  To

facilitate the transition in ownership, Sellers agreed to help encourage former clients to transition their accounts to Purchasers. (*Id*. ¶ 26.) In exchange for these assets, Purchasers agreed to pay Sellers $3.64 million, with 40% paid at closing and the remainder paid in quarterly intervals thereafter. (*Id*. ¶ 27.)

To protect Purchasers' interest in the Business's goodwill, Defendant Di Vincenzo agreed to restrictive covenants that "barred her from providing services to [Sellers'] former clients, from competing in the same geographical area, and from poaching employees from the [B]usiness or Purchasers." (*Id*. ¶ 3.) These covenants included a provision that prohibited Sellers from providing any financial services to their former clients, a category defined as persons to whom Di Vincenzo and Lions Bridge had provided financial services within the 24 months preceding execution of the APA. (*Id*. ¶ 29.) Further, Di Vincenzo was barred from competing with Purchasers within a prohibited area—specifically Virginia, Maryland, North Carolina, South Carolina, and Washington, DC—and prohibited from having a significant financial stake in any business competing with Purchasers within the prohibited area. (*Id*. ¶ 30.) Finally, the APA forbid Di Vincenzo from soliciting or hiring any employee of the Business or of Purchasers, from inducing any employee to end their relationship with the Business or Purchasers, and from using or sharing confidential information. (*Id*. ¶¶ 31–32.) These restrictive covenants were to last two years after Purchasers' final payment under the APA. (*Id*. ¶ 33.)

Plaintiff alleges that Defendant Di Vincenzo violated her obligations under these restrictive covenants, effectively attempting to retain and reconstitute the very business she had sold. (*Id*. ¶ 4.) Plaintiff contends that a key part of Defendant Di Vincenzo's scheme was to transfer client accounts from LPL Financial, LLC, the company providing broker-dealer services to the Business prior to its sale, to a new broker-dealer, Cambridge Investment Research Advisors, Inc., which

was aware that Defendant Di Vincenzo's actions violated her obligations under the restrictive covenants. (*Id*. ¶¶ 5–6.) In furtherance of the alleged scheme, Di Vincenzo failed to immediately take the necessary action of changing the name of her company to one that does not include the words "Lions Bridge." This in turn impeded Colonial River's registration of the Business's trade name with the Virginia State Corporation Commission. (*Id*. ¶¶ 37–38.) Plaintiff also alleges that, rather than helping transition her former clients to Colonial River, Di Vincenzo instead made "false and defamatory statements" about Colonial River, failed to transfer control of the Business's domain name, did not transfer Lions Bridge's insurance business to Colonial River, and entirely ceased her efforts to transition clients to Purchasers by June 16, 2020. (*Id*. ¶¶ 39–45.)

Additionally, Plaintiff alleges that Di Vincenzo in fact sold the Business not to retire as she originally proffered, but rather in order to start a competing investor-advising business. (*Id*. ¶ 46.) In service of this new endeavor, Di Vincenzo and former Colonial River employee Kristen Forbes took confidential information from Colonial River and set up a new business as a Georgia LLC called "Fiduciary Edge Advisors, LLC". (*Id*. ¶¶ 47–48.) Plaintiff further contends that Di Vincenzo provided false addresses for the new business to the Securities and Exchange Commission, FINRA, and the SCC. (Id. ¶ 49.) At the same time, she created a similarly named Virginia entity, "Fiduciary Edge Advisors LLC" from which she allegedly competed with Colonial River in further violation of the APA. (*Id*. ¶ 51.)

Plaintiff further alleges that Di Vincenzo entered into a relationship with Defendant Cambridge Investment Research, Inc. ("Cambridge"), a broker-dealer, in order to help operate her new business. (*Id*. ¶ 54.) At some point, Di Vincenzo provided Cambridge with the APA, in violation of the APA's confidentiality provisions. (*Id*. ¶ 56.) After signing on as a Cambridge representative, Di Vincenzo induced several of her clients to transfer assets from LPL Financial to

4

Cambridge. (*Id*. ¶ 57.) Di Vincenzo also originated new clients by diverting Colonial River clients to Fiduciary Edge and Cambridge. (*Id*. ¶ 59.) Plaintiff claims that Cambridge was conscious of its wrongdoing and possible liability in this matter, in part because Purchasers sent a letter to Cambridge notifying it of Di Vincenzo's alleged breaches. (*Id*. ¶¶ 60–62.) Despite this warning, Cambridge continued to do business with Di Vincenzo, accepting both transfers and new clients from her. (*Id*. ¶ 63.) Cambridge then demanded that Di Vincenzo indemnify it from any losses stemming from her actions and memorialized this agreement in writing on September 14, 2020. (*Id*. ¶¶ 64–65.) Plaintiff alleges that, for several months following the execution of the indemnity agreement, Di Vincenzo siphoned away several of her former clients, substantially impacting the business prospects of Colonial River. (*Id*. ¶¶ 68–69.)

On September 25, 2020, Di Vincenzo commenced a Financial Industry Regulation Authority ("FINRA") arbitration, FINRA Case No. 20-03366, against Garofalo and Colonial River. (FINRA Award 1, ECF No. 24-1.) That arbitration sought declaratory relief and asserted causes of action for breach of contract, breach of covenant of good faith and fair dealing, disparagement and defamation, fraud and misrepresentation, and tortious interference with business expectancy. (*Id*. 3.) Garofalo then filed a FINRA counterclaim seeking both injunctive and declaratory relief and alleging tortious interference, defamation, fraud, misrepresentation, and breach of contract. (*Id*.) From December 6–14, 2021, the matter was arbitrated before a three-person panel. Ultimately, the arbitration panel found Garofalo liable, rejected Garofalo's counterclaims, and awarded Di Vincenzo over $2 million in compensatory damages, fees, and costs. (*Id*. 7–8.)

At the same time that Garofalo and Colonial River filed Counterclaims in the FINRA action, they also filed an action in the Circuit Court for James City County and Williamsburg

alleging the same claims. (Mem. Supp. Mot. Dismiss 2, ECF No. 24.) Colonial River and Garofalo nonsuited that action after Di Vincenzo filed a Motion to Dismiss. (*Id.*) On March 4, 2022, Di Vincenzo commenced an action in the Circuit Court for the City of Richmond to confirm the FINRA arbitration award, and Garofalo filed a cross-petition to vacate the award based on the alleged misconduct of one of the arbitrators and a claim that the arbitrators exceeded their power by awarding attorney's fees. (*See* Confirmation Opinion 1, ECF No. 80-1.)

While that action was pending, Plaintiff Colonial River filed suit in this Court, on November 10, 2022. (Compl., ECF No. 1.) On December 16, 2022, Plaintiff filed an Amended Complaint[2] against Defendants Cambridge Investment Research, Inc., Cambridge Investment Research Advisors, Inc. (collectively, the "Cambridge Defendants"), and Defendant Di Vincenzo, alleging five counts. (ECF No. 11.) The counts are as follows: Tortious Interference with Contract against Cambridge (Count I), Tortious Interference with Business Expectancy against Cambridge (Count II), Business Conspiracy against Cambridge and Di Vincenzo (Count III), Common Law Civil Conspiracy against Cambridge and Di Vincenzo (Count IV), and Breach of Contract against Di Vincenzo (Count V). (*See generally* Am. Compl.) Di Vincenzo later filed a Counterclaim against Plaintiff, alleging breach of contract. (Answer & Counterclaim, ECF No. 39.)

On January 20, 2023, Di Vincenzo filed the instant Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 23.) Plaintiff filed its Opposition to the Motion on February 3, 2023 (ECF No. 28), and Di Vincenzo filed her Reply on February 9, 2023 (ECF No. 30).

---

[2] On November 16, 2022, the Court had ordered Plaintiff to amend its pleading to clarify the basis for diversity jurisdiction. (Order, ECF No. 7.)

Subsequently, the Circuit Court for the City of Richmond held a two-day hearing on the pending action to confirm or vacate the FINRA arbitration award and, on June 8, 2023, the Circuit Court ruled in favor of Di Vincenzo and confirmed the award.[3]  (Confirmation Op. 12–13.)

## II. LEGAL STANDARD

Defendant Di Vincenzo bases her Motion to Dismiss on arguments of res judicata, i.e., claim preclusion, and collateral estoppel, i.e., issue preclusion.  A motion to dismiss under the doctrines of res judicata or collateral estoppel is properly reviewed under the standard for Rule 12(b)(6).  *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006); *see also Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).  As when resolving a standard 12(b)(6) motion to dismiss, the Court must accept all of the plaintiff's well-pleaded allegations as true.  *See Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006).  The Court will dismiss a claim pursuant to Rule 12(b)(6) only if "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Typically, the Court's review of a motion to dismiss is limited to the factual allegations contained in the complaint and excludes "any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 2006 WL 228621, at *1 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).  When a party argues in a motion to dismiss that a claim is precluded by a prior action, however, the Court may take judicial notice of the prior action in resolving the motion.  *See Daw*, 201 F.3d at 524 n.1 ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial

---

[3] The action itself remains pending, however, for further briefing on the issue of attorneys' fees.

notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."). This allows the Court to take judicial notice of the prior action even if the plaintiff did not expressly refer to it in the complaint. *See Witthohn*, 164 F. App'x 395, 2006 WL 228621, at *1–2.

### III. ANALYSIS

Defendant Di Vincenzo contends that the instant matter is subject to both claim and issue preclusion, as it involves the same facts, circumstances, claims, legal issues, and relief sought as earlier, already-arbitrated matters. (Mem. Supp. Mot. Dismiss 2–3.) Plaintiff Colonial River responds that the motion fails on four grounds: (1) Colonial River never agreed to be bound by an arbitral panel; (2) Di Vincenzo agreed to have her disputes with Colonial River litigated in court, not before an arbitration panel; (3) the arbitration award is itself currently under appeal; and (4) there is no privity between Colonial River and Garofalo. (Opp'n Mot. Dismiss 1, ECF No. 28.) The Court will first consider Di Vincenzo's res judicata argument; if res judicata does not preclude the action, the Court will then turn to the question of collateral estoppel.

**A.  Res Judicata**

When a federal court sits in diversity, the court will look to the preclusion doctrines of the state where the adjudication occurred—in the present case, Virginia. Under Virginia law, the doctrine of res judicata, also known as claim preclusion, "precludes parties from relitigating a cause of action when a valid final judgment has been entered on the matter." *Wright v. Eckhardt*, 591 S.E.2d 668, 670 (2004). The party seeking preclusion has the burden of establishing that the issue in contention has already been adjudicated and that a final judgment has been entered. *Columbia Gas Transmission, LLC v. David N. Martin Revocable Trust*, 833 F.Supp.2d 552, 558 (E.D. Va. 2011).

Rule 1:6 of the Rules of the Supreme Court of Virginia, which governs the doctrine of res judicata, states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6(a).  Thus, under Virginia law, a claim of res judicata is valid where "(1) there was a prior claim for relief decided on the merits by a valid and final judgment; (2) the parties are identical or in privity with each other; (3) the claim made in the later suit arises from the same conduct, transaction, or occurrence as the claim filed in the first suit."  *Brown v. Tompkins Builders, Inc.*, Case No. 3:16-cv-599, 2016 WL 7131504, at *2 (E.D. Va. Dec. 6, 2016); *see also Columbia Gas*, 833 F.Supp.2d at 558.

### 1. *Final and On the Merits*

As discussed above, the first criteria in assessing a claim of res judicata is whether the prior judgment is final and on the merits.  *Columbia Gas*, 833 F.Supp.2d at 558.  Virginia Supreme Court Rule 1:6(a) prevents parties who have asserted a "claim for relief" "from prosecuting any second or subsequent civil action against the same opposing party."  Va. Sup. Ct. R. 1:6(a); *see also Capital Fiduciary Advisors, LLC v. Leasure*, No. 1:18-cv-762, 2018 WL 10562437 at *3 (E.D. Va. Nov. 21, 2018).  "A final judgment is essential to the imposition of res judicata to bar a claim."  *Kellogg v. Green*, 809 S.E.2d 631, 635 (Va. 2018); *see also Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998).  In the present case, the Court finds that the FINRA Arbitration satisfies this element.  "When parties choose to resolve their disputes by arbitration rather than litigation, even though the resolution reached in that process does not require the application of legal principles,

9

courts have applied the doctrine of res judicata to preclude subsequent litigation on issues resolved by validly issued arbitration awards." *Waterfront Marine Const., Inc. v. N. End 49ers Sandbridge Bulkhead Groups A, B & C*, 468 S.E.2d 894, 902 (Va. 1996).  Further, Va. Code § 8.01-581.012 provides that a judgment confirming an arbitration is to be treated like any other judgment, including the application of res judicata.  *Id*.  Even where said arbitration award is under review from a state court, it may still be considered final if the parties cannot distinguish between a confirmed and an unconfirmed award.  *Id*.; *see also Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166 (8th Cir. 1989); *Behrens v. Skelly*, 173 F.2d 715, 720 (3rd Cir. 1949).

Here, the arbitration resulted in a finding against Garofalo for default of the APA, failure to remit commissions, and costs and fees.  (FINRA Award 7–8.)  On top of that, on June 8, 2023, the Circuit Court for the City of Richmond confirmed that arbitration award and denied Garofalo's cross-petition to vacate the award, leaving unresolved only the issue of attorney's costs and fees.  (Confirmation Opinion 14.)  Thus, there is not only a final FINRA Arbitration award—and one that already considered and rejected Garofalo's counterclaims—in favor of Di Vincenzo, but also a court ruling that confirms the applicable aspects of the award.  Although the component of the award addressing attorney's costs and fees remains under review by the Circuit Court, such an assessment does not implicate the arbitral body's determinations regarding the substantive claims that reappear in this federal action.  As such, the prior proceeding was valid, final, and on the merits as it relates to the claims presented in this action.

### 2. Privity

The second criteria in assessing a claim of res judicata is whether the parties are identical or in privity with one another.  Privity between parties exists when a party is so identified in interest with a party to the prior litigation that he represents precisely the same right with respect to the

subject matter involved; "privity" requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same. *See Weinberger v. Tucker*, 510 F.3d 486, 491–92 (4th Cir. 2007); *Londono-Rivera v. Virginia*, 155 F.Supp.2d 551, 565 (E.D. Va. 2001). The concept of privity requires an alignment of interests, but not necessarily an exact alignment of parties. *Weinberger*, 510 F.3d at 492. Instead, privity focuses on the closeness of the relation in question. *Id.* at 493; *see also Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 715 (Va. 2019). Virginia courts typically find privity when the parties share a contractual relationship, owe some type of legal duty to each other, or have another legal relationship such as co-ownership. *Columbia Gas*, 833 F.Supp.2d at 558.

In this case, Garofalo and Colonial River were collectively referred to as "Purchasers" in the APA, sharing several obligations and entitlements under the contract. In her brief, Di Vincenzo contends that after she had transitioned over 85% of her clients to Garofalo and Colonial River in accordance with the APA, Garofalo and Colonial River wrongfully defaulted on their payment obligations. (Mem. Supp. Mot. Dismiss 4.) This alleged default was the basis for the FINRA arbitration commenced by Di Vincenzo in September 2020, and subsequently Garofalo's counterclaim alleging interference with Purchasers' contract rights and business expectancies, among other things. (*Id.*) Despite this, Garofalo's counterclaim did not formally include Colonial River, and Colonial River refused to voluntarily submit to FINRA. (*See* Letter re: Colonial River's Refusal to Submit, ECF No. 24-4.)

Di Vincenzo asserts that Colonial River is Garofalo's privy as he is both Colonial River's sole shareholder and its co-party to the APA. (*Id.* 15.) Di Vincenzo claims that Garofalo and Colonial River have the same interests, and that those interests were represented by Garofalo in the prior FINRA arbitration that denied Garofalo's counterclaims in their entirety. (*Id.* 2, 15–16.)

In opposing the Motion to Dismiss, Colonial River argues that Colonial River and Garofalo are separate and distinct under Virginia law, and that treating them as privy would be akin to a piercing of the corporate veil, something for which the movants do not have cause under Virginia law. (Mem. Opp'n Mot. Dismiss 12–18.)

The Court agrees with Di Vincenzo. "The proposition is elementary that a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it." *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 580 S.E.2d 806, 809 (Va. 2003) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co*, 360 S.E.2d 828, 831 (Va. 1987)). This principle is applicable "even when the corporation is owned totally by a single person, unless the corporation is held to be the alter ego, alias, stooge, or dummy of the individual shareholder." *Barnett v. Kite*, 624 S.E.2d 52, 55 (Va. 2006); *see also O'Hazza v. Executive Credit Corp.*, 431 S.E.2d 318, 320-21 (Va. 1993). Thus, Garofalo and Colonial River are not identical parties under typical circumstances. However, privity does not require that the parties be one in the same. Rather, it exists "where a party's interest is so identical with another that representation by one party is representation of the other's legal right." *Lane*, 831 S.E.2d at 715 (internal citations and quotations omitted).

In the present matter, Garofalo and Colonial River are in privity. While Virginia law does not automatically assign privity to a corporate entity and its sole shareholder, courts frequently consider sole membership status as a factor when evaluating whether privity exists. *See Lee v. Spoden*, 776 S.E.2d 798, 805 (2015); *Camara v. Gold Coast IT Sols., LLC*, No. 1:17-cv-0070, 2017 WL 6030464, at *2 (E.D. Va. Dec. 5, 2017). Not only is Garofalo the sole member of Colonial River, but under the APA, Colonial River and Garofalo are classed together, jointly and severally, as "Purchasers." (APA 30, ECF No. 24-2.) This shared classification as "Purchasers" under same the contract that Colonial River claims was violated adds weight to an argument in

12

favor of privity. Together as Purchasers, Garofalo and Colonial River were the beneficiaries of the restrictive covenants imposed on Di Vincenzo and Lions Bridge; they were the recipients of all rights and title in seller's business assets and liabilities; they shared payment obligations; they shared liability for default; and they together offered and were the beneficiaries of warranties, among other shared property rights and obligations. (*Id*. 31–46.)

While there are distinctions between Colonial River and Garofalo—namely in where they must respectively adjudicate claims, who assumes particular leases, and certain collateral obligations—those distinctions do not impact the privity analysis as they are unconnected to the subject matter of Plaintiff's Complaint in this Court, which alleges tortious interference, conspiracy, and breach of contract. Further, as Defendant points out in her brief, Garofalo referred to himself and Colonial River together throughout his already-adjudicated FINRA Counterclaim, including in his requests for relief. (Mem. Supp. Mot. Dismiss 17–19.) This supports the finding that Colonial River's interests were represented by Garofalo in the FINRA Arbitration, and further that the second prong in the res judicata analysis is satisfied.

### 3. Same Conduct, Transaction, or Occurrence

The third and final factor in evaluating the applicability of res judicata is that the claim made in the later suit arises from the same conduct, transaction, or occurrence as the claim filed in the first suit. *Columbia Gas*, 833 F. Supp. 2d at 558. In its response to Defendant Di Vincenzo's Motion to Dismiss, Plaintiff chooses not to specifically address this prong, instead focusing on the finality and privity elements of the preclusion doctrines. This Court will be similarly brief in its analysis.

In Virginia, the proper approach to determine what is a single transaction or occurrence under Rule 1:6 asks, "whether the facts are related in time, space, origin, or motivation, whether

13

they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 897 (2017). As reviewed throughout this Opinion, the FINRA Arbitration, including Garofalo's counterclaims, the City of Richmond Circuit Court proceedings, and the present action all assert the same claims and arise from the same set of events, such that their treatment as a "trial unit" would be convenient, expected, and appropriate.

In a chart in her brief, Di Vincenzo compares the Amended Complaint's allegations and those of Garofalo's FINRA Counterclaim. (Mem. Supp. Mot. Dismiss 9–13.) Upon review of the arbitration documents attached to the Motion, the Court confirms the similarities outlined in Defendant's brief. The claims asserted in the FINRA Arbitration and repeated in the Amended Complaint in this action include, but are not limited to, alleged violations of the restrictive covenants contained in the APA, failure to help transition clients and business pursuant to the requirements of the APA, false and defamatory statements made about Colonial River, the wrongful taking of confidential information, the formation of a competitor business in contravention of the requirements of the APA, and the stealing and origination of new clients for the competitor business. *Id*. Notably, the facts outlined in Garofalo's Counterclaim/Second Amended Statement of Claim constitute a detailed set of allegations, timelines, and circumstances that track with the Complaint in the matter before this Court. (*See* Garofalo Counterclaim, ECF 24-3.) These details make plain that the two adjudications were based on the same conduct and transaction, and so the Court finds that the third and final factor is also satisfied.

Based on the foregoing, this Court finds that each of the elements necessary to invoke the principle of res judicata are present in this case. Therefore, Plaintiff's Complaint must be barred from re-litigation under this longstanding legal principle.

**B.  Collateral Estoppel**

Because the Complaint will be dismissed in its entirety due to claim preclusion, the Court need not assess whether the doctrine of collateral estoppel (issue preclusion) also applies in this civil action.

### IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendant Di Vincenzo's Motion to Dismiss (ECF No. 23) as to all of Plaintiff's claims against Di Vincenzo in the Amended Complaint.  An appropriate Order will accompany this Memorandum Opinion.

/s/ _____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: July 19, 2023