IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COLONIAL RIVER WEALTH    )
ADVISORS, LLC,           )
      Plaintiff,        )
                         )
v.                       )         Civil Action No. 3:22cv717 (RCY)
                         )
CAMBRIDGE INVESTMENT     )
RESEARCH, INC., *et. al.* )
      Defendants.       )
_____)

## MEMORANDUM OPINION

This matter is before the Court on Defendant Jayne W. Di Vincenzo's Motion for an Award of Attorneys' Fees and Costs (ECF No. 89). The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will grant the Motion for Attorneys' Fees and Costs (ECF No. 89).

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The facts of this case have been thoroughly laid out in this Court's prior Opinions. *See, e.g.,* July 19, 2023 Mem. Op. (hereinafter, "Mem. Op."), ECF No. 83. Thus, only a brief recitation of the facts and procedural history is necessary here. Plaintiff Colonial River Wealth Advisors ("Plaintiff" or "Colonial River") is a Virginia company providing investment advice and other financial services. Mem. Op. 2. Its sole member is Devin Garofalo. *Id.* Defendant Jayne Di Vincenzo ("Defendant," or "Di Vincenzo") is an investment advisor who formerly operated Lions Bridge Financial Advisors, Inc. ("Lions Bridge"), an investment advisor and securities brokerage business. *Id.* In or around September 2019, Di Vincenzo received information that Garofalo and

Colonial River might be interested in purchasing Lions Bridge (the "Business"). *Id.* On February 18, 2020, Garofalo, Colonial River, Di Vincenzo, and Lions Bridge entered into an Asset Purchase Agreement ("APA") wherein Di Vincenzo and Lions Bridge (collectively, "Sellers") sold all of the Business's assets to Garofalo and Colonial River (collectively "Purchasers"). *Id.* The deal closed on March 3, 2020, when Colonial River wired $1.3 million to Di Vincenzo. *Id.*

Disputes concerning the parties' respective obligations under the APA eventually formed the basis of the instant suit. *See id.* at 2–7. Defendant originally commenced related arbitration proceedings with the Financial Industry Regulation Authority ("FINRA") on November 10, 2022, against Garofalo and Colonial River. *Id.* at 5. That arbitration sought declaratory relief and asserted causes of action for breach of contract, breach of covenant of good faith and fair dealing, disparagement and defamation, fraud and misrepresentation, and tortious interference with business expectancy. *Id.* Garofalo then filed a FINRA counterclaim seeking both injunctive and declaratory relief and alleging tortious interference, defamation, fraud, misrepresentation, and breach of contract. *Id.* From December 6–14, 2021, the matter was arbitrated before a three-person panel. *Id.* Ultimately, the arbitration panel found Garofalo liable, rejected Garofalo's counterclaims, and awarded Di Vincenzo over $2 million in compensatory damages, fees, and costs. *Id.*

Around the same time Garofalo and Colonial River filed Counterclaims in the FINRA action, they also filed an action in the Circuit Court for James City County and Williamsburg alleging the same claims. *Id.* at 5–6. Colonial River and Garofalo nonsuited that action after Di Vincenzo filed a Motion to Dismiss. *Id.* at 6. On March 4, 2022, Di Vincenzo commenced an action in the Circuit Court for the City of Richmond to confirm the FINRA arbitration award, and

Garofalo filed a cross-petition to vacate the award based on the alleged misconduct of one of the arbitrators and a claim that the arbitrators exceeded their power by awarding attorney's fees.[1]  *Id.*

Then, while that action was pending, Plaintiff Colonial River filed suit in this Court, on November 10, 2022.  Compl., ECF No. 1.  On December 16, 2022, Plaintiff filed an Amended Complaint[2] against Defendants Cambridge Investment Research, Inc., Cambridge Investment Research Advisors, Inc. (collectively, the "Cambridge Defendants"), and Defendant Di Vincenzo, alleging five counts.  ECF No. 11.  Plaintiff alleged the following counts against Defendant Di Vincenzo: Business Conspiracy, Common Law Civil Conspiracy, and Breach of Contract. Defendant Di Vincenzo filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6),[3] as well as a Counterclaim alleging breach of contract.  Mem. Op. 6.

Ultimately, this Court granted Defendant's Motion to Dismiss on res judicata grounds.  *See* Mem. Op. 1, 8–15.  Specifically, this Court held that res judicata precluded Plaintiff's claims because (1) the FINRA proceedings culminated in a valid, final judgment on the merits (as it related to the claims presented in this action); (2) the parties and their respective interests in both the FINRA action and this action are sufficiently similar as to satisfy the privity prong of the res judicata analysis; and (3) the claims in this action arise from the same conduct, transaction, or occurrence as the claims filed in the first suit.  *See* Mem. Op. 8–14.

Thereafter, Defendant Di Vincenzo filed the instant Motion for Attorneys' Fees and Costs. ECF No. 89.  Plaintiff timely filed its Opposition on August 29, 2023.  ECF No. 91.  Defendant

---

[1] The Circuit Court for the City of Richmond held a two-day hearing on the pending action to confirm or vacate the FINRA arbitration award and on, June 8, 2023, the Circuit Court ruled in favor of Di Vincenzo and confirmed the award.  Mem. Op. 7.

[2] On November 16, 2022, the Court ordered Plaintiff to amend its pleading to clarify the basis for diversity jurisdiction.  Order, ECF No. 7.

[3] The Cambridge Defendants filed their own Motion to Dismiss, arguing that the APA obligated Plaintiff to pursue its claims against the Cambridge Defendants in an arbitral forum, rather than federal court.  *See* July 24, 2023 Mem. Op., ECF No. 85.  The Court granted the motion on July 24, 2023.  Order, ECF No. 86.

filed a Reply in Support of her Motion on September 5, 2023.  ECF No. 92.  Accordingly, this matter is now ripe for disposition.

## II. LEGAL STANDARD

Rule 54(d) of the Federal Civil Rules of Procedure authorizes a court to award attorneys' fees and expenses to the prevailing party.  Fed. R. Civ. P. 54(d).  Rule 54(d) creates a division in the handling of attorneys' fees claims between claims that are "not part of the underlying substantive claim, which must be made by motion, and claims that are an element of damages, which presumably must be made by a complaint."  *Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 358 (4th Cir. 2005), *abrogated on other grounds*, *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 182–83 (2014).  Claims for attorneys' fees based upon a contractual "prevailing party" provision fall into the latter category and must be made by motion.  *See Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006); *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 613 (E.D. Va. 2015).

The party seeking attorneys' fees bears the burden of proving "that the requested fees are reasonable and that they were necessary."  *Sidya v. World Telecom Exch. Comms., LLC,* 301 Va. 31, 46 (2022) (quoting *West Square, L.L.C. v. Comm. Techs., Inc.*, 274 Va. 425, 433 (2007)).[4]

---

[4] A federal court sitting in diversity—as here—applies the substantive law of the state in which it sits. *Megaro v. McCollum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023).  Therefore, the Court applies Virginia law in interpreting the relevant contract, which itself permissibly identifies Virginia law as governing the agreements therein.  *See* Mem. Supp. Ex. 1 (hereinafter, "APA") Art. X(F), ECF No. 90-1; *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999).  In turn, Virginia law governs whether attorneys' fees are available here, and if so, in what amount. *See Airlines Rep'g Corp. v. Sarrion Travel*, Inc., 846 F. Supp. 2d 533, 536 (E.D. Va. 2012) (citing *W. Insulation, L.P. v. Moore*, 362 Fed. App'x 375, 379 (4th Cir. 2010)).

## III. ANALYSIS

Before the Court are two related issues: (1) whether Defendant is entitled to attorneys' fees and costs as the prevailing party, and (2) if so, to what extent. The Court will answer these questions in turn below.

### A. Defendant Is Entitled to Attorneys' Fees and Costs Under Federal Rule of Civil Procedure 54(d) and the Provisions of the APA

Defendant argues that, as the prevailing party in this matter, she is entitled to attorneys' fees under the prevailing party provision of the APA. *See* Def.'s Mem. Supp. Mot. Award Att'ys' Fees & Costs ("Mem. Supp.") 6–9, ECF No. 90. Defendant likewise contends that she is entitled to an award of costs. *See id.* at 13–15. For its part, Plaintiff does not contest Defendant's entitlement to such fees or costs. Rather, Plaintiff mainly argues that the fees and costs sought by Defendant are unreasonable or otherwise excessive. *See* Pl.'s Opp'n Def.'s Mot. Att'ys' Fees and Costs ("Mem. Opp'n") 1–15, ECF No. 91.

Attorneys' fees are typically recoverable where the parties by contract *agree* that attorneys' fees will be recoverable. *E. Tex. Salvage & Mach. v. Duncan*, 306 S.E.2d 896, 897 (Va. 1983). For instance, parties may enter a contract wherein the prevailing party in any action relating to the contract will be entitled to recover attorneys' fees. *See, e.g., Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006). A party may enforce such a provision pursuant to a motion that satisfies the requirements of Rule 54(d)(2). *See* Fed. R. Civ. P. 54(d)(2). To satisfy the strictures of Rule 54(d)(2), a party seeking to recover its attorneys' fees must make a motion (1) "no later than 14 days after the entry of judgment," (2) specifying the grounds entitling the movant to the award, (3) stating the amount sought and/or providing a fair estimate of it, and (4) disclosing, if the court so orders, "the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B)(i)–(iv).

Here, there is no dispute about whether Defendant's motion satisfies the above requirements. *See* Mem. Opp'n 1–15 (contesting the reasonableness of the fees sought by Defendant, rather than her entitlement to attorneys' fees). Indeed, Plaintiff could not credibly dispute Defendant's entitlement to such fees. Defendant (1) timely filed her Motion for Attorneys' Fees and Costs within fourteen days of the entry of judgment, *see* Mot. Award Att'ys' Fees & Costs 1–2, ECF No. 89; (2) outlined the grounds entitling her to the award (i.e., the APA)[5], *see* Mem. Supp. 1, 6–15; (3) stated the amount sought, *see* Mem. Supp. 12–15; and (4) disclosed certain relevant fee agreement terms, even without order of the Court. *See, e.g.*, Mem. Supp. 11–12. Under such circumstances, Defendant clearly satisfies the threshold requirements for *entitlement* to reasonable attorneys' fees. *See* Fed. R. Civ. P. 54(d)(2).

Defendant likewise sufficiently establishes her entitlement to costs related to this litigation. "Under Rule 54(d)(1) . . . costs 'should be allowed to the prevailing party' unless a federal statute provides otherwise." *Williams v. Metro Life Ins. Co.*, 609 F.3d 622, 636 (4th Cir. 2010) (quoting Fed. R. Civ. P. 54(d)(1)). Rule 54(d)(1) therefore creates "the presumption that costs are to be awarded to the prevailing party." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). Here, Plaintiff does not contest that Defendant is the prevailing party, nor does Plaintiff contest Defendant's entitlement to costs more generally. *See* Mem. Opp'n 12–15. Instead, Plaintiff merely disputes the *scope* of the costs sought by Defendant. *See id.* The Court will consider the parties' disputes about the scope of attorneys' fees and costs below.

---

[5] The APA provides, in relevant part, that in the event of "any litigation or other legal proceedings the substantially prevailing party or parties, as determined by the judge or other presiding official, shall recover its reasonable attorney's fees incurred in such dispute from the other party or parties." APA Art. X(G).

**B. The Attorneys' Fees Sought by Defendant Are Reasonable and Recoverable**

Defendant seeks "$227,357.00 in attorneys' fees for 567 hours spent by her counsel defending against three causes of action alleged in the Amended Complaint." Mem. Supp. 12; Mem. Supp. Ex. 4 ("Willett Decl.") ¶ 20, ECF No. 90-4. In response, Plaintiff argues that (1) the block billing practices of Defendant's counsel make it impossible to determine which attorneys' fees are reasonable, *see* Mem. Opp'n 3–7, and (2) in any event, bills for some of the tasks are "manifestly excessive and should be rejected." Mem. Opp'n 7.

To determine whether fees sought are reasonable, "a district court must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonable expended)," before then "subtract[ing] fees for hours spent on unsuccessful claims unrelated to successful ones." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). It is the first portion of this analysis— determining the lodestar amount—that involves consideration of the various factors outlined by both the Virginia Supreme Court and the Fourth Circuit.

The factors for consideration are, *inter alia*, "the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate." *Chawla v. BurgerBusters, Inc.*, 499 S.E.2d 829, 833 (Va. 1998). Other similar factors outlined by the Fourth Circuit may also be considered, to the extent they are consistent with the factors elucidated by the Virginia Supreme Court.[6] *See Chawla*, 499 S.E.2d at 833. While the trial court is vested with

---

[6] In *Barber v. Kimbrell's*, the Fourth Circuit outlined twelve additional factors relevant to the attorneys' fees inquiry:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8)

significant discretion in this inquiry, it must make detailed findings of fact with regard to every relevant factor considered.  *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). Finally, a court need not comment on *every* single factor.  *See In re A.H. Robins Co.*, 86 F.3d 364, 376 (4th Cir. 1996).  Instead, courts need only analyze factors that are relevant.  *Id.*

With this analytical framework in mind, the Court turns first to the lodestar analysis, before then considering whether any reductions are merited.  *See Grissom*, 549 F.3d 313, 320–21.

1. Lodestar Analysis

Defendant's argument for fees in this matter is relatively straightforward.  Defendant opens by noting that she seeks $227,357 in attorneys' fees for 567 hours "spent by her counsel defending against three causes of action alleged in the Amended Complaint, including researching and briefing the successful motion to dismiss, preparing for and attending depositions, responding to extensive written discovery, and defending against duplicative and irrelevant subpoenas *duces tecum* to third parties."  Mem. Supp. 12.  Defendant submits the billing invoices she received from her attorneys in support of her fee request.  *Id.*  Next, Defendant notes that her attorneys agreed to discounted rates[7] that are "more than reasonable for a matter of this complexity" in the relevant Richmond market.  *See id.* (citing Mem. Supp. Ex. 6 ("Broughton Decl.") ¶ 25, ECF No. 90-6; *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007) (quoting *Rum Creek Coal Sales, Inc. v.  Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)); *United States ex rel. Cody v.*

---

the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d 216, 226, 226 n.28 (4th Cir. 1978).

[7] Defendant notes that she "agreed to and has been charged a discounted hourly rate by Mr. Willett of $400/hour and Ms. Jones of $385/hour, and rates for other personnel of Christian & Barton, LLP, ranging from $305/hour for associates and $205/hour for paralegals."  Mem. Supp. 12.

*ManTech Int'l Corp.*, 2017 WL 5146019, at *3 (E.D. Va. Aug. 30, 2017)).   Defendant then concludes that, based upon an analysis of the relevant facts and factors, the attorneys' fees incurred were reasonable and necessary.[8]   Accordingly, Defendant argues that the fees should be awarded. *Id.* at 13.

In response, Plaintiff primarily argues that "[t]he block-billing practices of [Defendant's] counsel make it impossible for the Court to determine which attorney fees are 'reasonable.'"  Pl.'s Opp'n 3.   While Plaintiff concedes that there is no *per se* prohibition on block billing, it argues that such a practice prevents the Court from being able to accurately determine the reasonableness of the fee request at issue.  *See id.* at 3–4.   Specifically, Plaintiff notes that the block billing practices utilized by Defendant's attorneys—which often involved lumping various discrete tasks together without specifying how much time was spent on each individual task—prevent the Court from "undertaking any rational analysis of the reasonableness of time spent on legal tasks in this case." *Id.* at 6.  As a result, Plaintiff urges that Defendant should not be awarded any fees. *Id.* at 7.  However, "to the extent the Court decides to award any fees, [Plaintiff] submits that an across-the-board 50% reduction in fees would be appropriate" to correct for Defendant's failure to "itemize attorney tasks separately."  *Id.*  Plaintiff also generally argues that, while Defendant's block billing obscures the precise amount of time spent on a given task, "the bills for some of the tasks are manifestly excessive and should be rejected." *Id.*; *see also id.* at 7–12.

The Court identifies the following factors as relevant to its lodestar inquiry:  (1) time and effort expended by the attorneys; (2) the nature of the services rendered; (3) the complexity of the

---

[8] Specifically, Defendant emphasizes the following factors: "the time and labor expended, the novelty and difficulty of the subject matter, the skill required to provide effective representation in this case, the customary fees charged for similar services by lawyers of reasonably comparable skill, experience, and reputation in Richmond, Virginia, the amount in controversy and the results obtained, the experience, reputation, and ability of the attorneys and other professionals providing the services."  Mem. Supp. 13.

services; (4) the value of the services to the client; (5) the amount in controversy and the results obtained; (6) whether the fees incurred were consistent with those generally charged for similar services; and (7) whether the services were necessary and appropriate. *See Chawla*, 499 S.E.2d at 833; *Barber v. Kimbrell's, Inc.*, 577 F.2d at 226, 226 n.28 (4th Cir. 1978). Based on its analysis of these factors, the Court finds that the fees charged by Defendant's counsel were generally reasonable.

### a. Time and Effort Expended by Attorneys, and Appropriateness of the Services Rendered

Beginning with (1) and (7), it is evident that Defendant's attorneys appropriately spent a substantial amount of time and effort on this matter. *See* Willett Decl. ¶¶ 5, 12–15 (outlining the relatively complicated history surrounding this case, as well as the fact that Defendant indicated that "substantial fees and costs" would be incurred should the case proceed to the discovery stage); Broughton Decl. ¶¶ 15–16, 21–24; *see generally* Mem. Supp. Ex. 7 ("Christian & Barton Invoices"), ECF No. 90-7. Defendant was thrust into a duplicative litigation with millions of dollars potentially on the line, and reasonably sought to mount a strong defense to avoid liability. *See* Broughton Decl. ¶¶ 11–18. A finding that Defendant's attorneys necessarily spent a substantial amount of time on this matter is further bolstered by the fact that Plaintiff previously sought attorneys' fees and expenses of $782,376, in the event that it was the prevailing party. *See* Willett Decl. ¶ 6. Plaintiff's claim for such fees is relevant, insofar as it indicates that (a) Plaintiff's attorneys were likewise expending a substantial amount of time and effort on this matter and (b) a substantial amount of time and effort was *necessary* to mount a successful claim or defense in this case.

Moreover, Defendant presented an unrebutted expert opinion that "[t]he work performed by Christian & Barton and the amount of time expended was appropriate for the work performed

10

and . . . was reasonable and necessary in light of the litigation engaged by Colonial River." Broughton Decl. ¶ 24; *see Lambert v. Sea Oats Condo. Ass'n, Inc.*, 798 S.E.2d 177, 185 (Va. 2017) (citing *Chawla*, 499 S.E.2d at 833, for the proposition that, while the party seeking an award of attorneys' fees bears the burden in establishing the reasonableness of the fees sought, supplying expert testimony in support of such fees may be persuasive evidence of their reasonableness). Here, the Defendant's expert's opinion, particularly when coupled with the other relevant facts outlined above, suggests that the amount of fees sought by Defendant is indeed reasonable.

### b. Nature and Complexity of the Services Rendered

Factors (2) and (3), which concern the nature and complexity of the services rendered, likewise counsel in favor of a finding that the fees sought here are reasonable.  This matter was initially filed during state court Confirmation Proceedings concerning the FINRA Award obtained by Defendant.  *See* Willett Decl. ¶¶ 3–4.  The Complaint and Amended Complaint sought essentially the same relief sought by Plaintiff via its Counterclaim in the FINRA proceedings.  *Id.* at ¶ 4.  Apparently, it became evident early on in the proceedings before the undersigned that substantial costs would result due to potentially extensive discovery, expert witness involvement, and brief drafting.  *See id.* at ¶¶ 4–9.  Moreover, Defendant's expert opined that "the nature [and] complexity . . . of the services rendered by [Defendant's] counsel," as well as the "novelty and difficulty of the subject matter" render the requested attorneys' fees reasonable.  *Id.* at ¶¶ 24, 26; *see id.* at ¶¶ 24–26.  The Court sees no reason in the record to disagree with this unrebutted opinion.

### c. Value of the Services to the Client, the Amount in Controversy, and the Results Obtained

The Court turns next to factors (4) and (5) which concern, respectively, the value of the services to the client, and the amount in controversy and the results obtained.  *See Chawla*, 499 S.E.2d at 833; *Kimbrell's,* 577 F.2d at 226, 226 n.28.  Here, the services were indisputably valuable

to the client.  Defendant—the client—was facing a claim for damages of "at least $13,759,974." Willett Decl. ¶ 6.  Defendant also potentially faced $782,376 in *Plaintiff*'s attorneys' fees, in the event the Plaintiff prevailed.  *Id.*  Thus, assuming Plaintiff had prevailed *and* obtained a full attorneys' fees award (not even factoring in other costs), that represents a difference of roughly $14,314,993.  It would be absurd to argue that avoidance of massive monetary liability does not render the relevant services valuable to the client.  Indeed, Plaintiff does not even attempt to make such an argument.  *See generally* Mem. Opp'n.  Thus, as to factors (4) and (5), it is clear that Defendant received significant value for the services obtained.

### d. Consistency of the Fees Incurred with Those Generally Charged for Similar Services

Finally, the Court considers factor (6)—whether the fees incurred were consistent with those generally charged for similar services.  In analyzing this factor, the Court considers "the affidavits submitted by both parties regarding reasonable attorney fees for the specific legal work in this case and the customary hourly rates typically charged to clients for similar work in similar cases."  *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 519 (E.D. Va. 2017) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)).  "In addition to the attorney's own affidavit[ ], the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."  *Lismont v. Alexander Binzel Corp.*, 47 F. Supp. 3d 443, 457 (E.D. Va. 2014) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (E.D. Va. 2009)).

Preliminarily, there appears to be no dispute that the *rates* charged by Defendant's counsel were reasonable.  *See* Mem. Supp. 12; *see generally* Mem. Opp'n (declining to challenge the reasonable of the rates charged).  Indeed, Defendant submitted an unrebutted expert opinion that the rates charged were reasonable in light of both the type of matter and relevant market.  *See*

Broughton Decl. ¶ 23–25 ("The hourly rates charged by Christian & Barton are typical of the charges for litigation in the City of Richmond, Virginia, for attorneys of similar skill, experience, and reputation.  Accordingly, the rates Christian & Barton charged . . . are all appropriate and in line with market rates for this type of matter.").  Defendant's counsel even provided its services at discounted rates, further solidifying the reasonableness of the rates charged.  *See* Willett Decl. ¶¶ 12–15.

The closer question concerns whether the *overall* fees incurred are reasonable.  Defendant presents several pieces of evidence in its favor.  First, Defendant provides an expert opinion indicating that the overall fees charged were reasonable.  *See* Broughton Decl. ¶¶ 20–26.  Mr. Broughton's declaration is well-supported, given his lengthy career as a litigation attorney, his familiarity with the relevant market, his extensive review of the factual record, and his consideration of the applicable factors.  *See id.* at ¶¶ 3–8, 10–18, 20–26.  Defendant also notes that at an earlier stage of this litigation, Plaintiff represented that it would be seeking $782,376 in legal fees in the event it prevailed—nearly three-and-a-half times what Defendant is seeking here.  Willett Decl. ¶¶ 6, 20.  Plaintiff's earlier position on fees therefore supports Defendant's contention that the award now sought by Defendant is reasonable.

Plaintiff's arguments in response deal primarily with the use of block-billing practices by Defendant's counsel.  *See* Mem. Opp'n 2–7.  Plaintiff contends that the use of block billing here renders it impossible for the Court to determine whether the fees sought are reasonable.  *See id.* Plaintiff also argues that that, block-billing ambiguities notwithstanding, the bills for some of the tasks are "manifestly excessive and should be rejected."  *Id.* at 7; *see* Mem. Opp'n 7–12.[9]  Based

---

[9] Plaintiff flags numerous specific billing entries during this portion of its argument.  *See* Mem. Opp'n 7–12. With regard to these contested entries, Plaintiff also notes that the task description was often embedded in a broader block-billed entry, making it difficult to know precisely how much time was spent on each discrete task.  Mem. Opp'n 7.

on these arguments, Plaintiff argues that Defendant should receive no attorneys' fees, or alternatively, a 50% reduction in attorneys' fees.  Mem. Opp'n 7.

As a preliminary matter, block billing is not *per se* prohibited by the courts.  *See Project Vote/Voting for Am. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012); *Torres-Baez v. Giovenco-Montano*, 2022 WL 15482678, at *7 (E.D. Va. Oct. 4, 2022), *report and recommendation adopted*, 2022 WL 14975888 (E.D. Va. Oct. 26, 2022); *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, 2022 WL 3635325, at *4 (E.D. Va. Aug. 23, 2022).  Rather, the dispositive question is whether the movant has submitted sufficiently detailed documentation to support its fee request, such that the Court can weigh the hours claimed and exclude hours that were not reasonably expended.  *See Guidry v. Clare*, 442 F. Supp. 2d 282, 293–94 (E.D. Va. 2006); *Torres-Baez*, 2022 WL 15482678, at *7.

It is true that, in some instances, block billing may "inhibit a court from accurately assessing the reasonableness of a fee request." *Torres-Baez*, 2022 WL 15482678, at *7.  And in fact, courts do frequently view block billing with skepticism.  *See Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607 (E.D. Va. 2015); *Guidry*, 442 F. Supp. 2d at 294; *McAfee*, 906 F. Supp. 2d at 498; *Project Vote*, 887 F. Supp. 2d at 716.  That is because block-billed or "lumped" entries frequently lack sufficient detail and therefore obscure the amount of time actually spent on the billed-for tasks.  *See Guidry*, 442 F. Supp. 2d at 294; *Project Vote*, 887 F. Supp. 2d at 716.  However, it is likewise true that block billing may be sufficient to support a request for a fee award where the billing summaries or records include "for each attorney, the date, the hours expended and the nature of the work done." *Antonio v. Sec. Serv. of Am., LLC*, 2011 WL 1230892, at *4 (D. Md. Mar. 30, 2011) (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983)

(a party "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.").

In those instances where block billing *does* preclude a court from thoroughly assessing the reasonableness of a free request, the court may reduce the fee award. *See Guidry*, 442 F. Supp. 2d at 294. Courts may do this in one of two ways: (1) by identifying and disallowing specific hours that are inadequately documented, or (2) by reducing the overall fee award by some fixed percentage or amount "based on the trial court's familiarity with the case, its complexity, and the counsel involved." *Id.* (citing *EEOC v. Nutri/System, Inc.,* 685 F. Supp. 568, 576 (E.D. Va. 1988) (*citing Uzzell v. Friday,* 618 F. Supp. 1222, 1226, 1229 (M.D.N.C.1985))); *see also McAfee v. Boczar,* 906 F. Supp. 2d 484, 500 (reducing the hours claimed by ten percent due to block billing); *Project Vote,* 887 F. Supp. 2d at 717 (reducing total fee request by ten percent due to block billing); *Wolfe v. Green,* 2010 WL 3809857, at *8 (S.D.W. Va. Sept. 24, 2010) (reducing total fee award by ten percent to account for counsel's practice from time to time of block-billing).

Here, the records provided by Defendant's counsel sufficiently permit the Court to assess the hours expended and the nature of the work completed. Take, for instance, an entry challenged by Plaintiff in the briefing—a May 22, 2023, billing entry for Mr. Willett for 8.3 hours. *See* Mem. Opp'n 6 (citing Christian & Barton Invoices 40). The entry reads as follows:

> Review by Mr. Willett of transcript of Ms. Di Vincenzo's deposition; preparation of correspondence regarding deposition outline for Colonial River; review of opposition to motion to quash filed by Colonial River; review and identification of exhibits from Ms. Di Vincenzo's deposition; review of Cambridge documents; review of amended notice of deposition for Cambridge; review of production documents for use in depositions; review of [redacted]; review of motion to quash third party subpoenas; review of Cambridge deposition notice objections; review of [redacted].

Christian & Barton Invoices 40.  As Defendant notes, this entry includes work related to eleven discrete tasks.  The Court must therefore determine whether 8.3 hours constitutes a reasonable amount of time to spend on those eleven tasks, which include, *inter alia*, the review of a 309-page deposition transcript and its myriad exhibits, Cambridge's document production, documents for use in upcoming depositions, and motion to quash certain subpoenas.  While the level of detail in this entry (and some others) could arguably be augmented by parentheticals indicating precisely how much time was spent on each discrete task therein, the Court is nonetheless able to adequately assess the reasonableness of Defendant's fee request.  *See GMS Indus. Supply*, 2022 WL 3635325, at \*4 (holding that block billing sufficiently established the reasonableness of a fee request where it permitted the court to "generally . . . assess the hours expended and the nature of work completed").  That is to say, it does not appear unreasonable for Defendant's counsel to have cumulatively spent 8.3 hours on the tasks listed in the above entry.  The same is true for the other block-billed entries as well.

Further bolstering this finding is the fact that (1) Defendant's counsel has already taken additional steps to ensure the reasonableness of its fee request, and (2) most of Defendant's counsel's billing entries do *not* contain as many lumped tasks as the above example.  *See* Broughton Decl. ¶ 23; Christian & Barton Invoices 2—53.  Regarding the former point, Defendant's counsel provided their services at a discounted rate and also wrote off excess time on numerous occasions.  *See id.* (noting that Defendant's counsel agreed to discounted rates for this representation, and that "time has been written down" on various invoices); *see also, e.g.,* Christian & Barton Invoices 3, 5–6, 14–16, 19, 25–31, 33, 51–53 (various instances of block-billed entries being either written down or written off entirely).  These additional steps safeguard against the concern that Defendant's counsel was engaging in practices that would have unreasonably inflated

its billing numbers.  *See GMS Indus. Supply*, 2022 WL 3635325, at *4  (suggesting that the utilization of cautionary "measures to account for [the] use of block billing" may weigh in favor of a finding of reasonableness).  As to the latter point, the fact that most entries are more succinct likewise counsels against a reduction of the fee award.  *Elderberry of Weber City, LLC v. Living Centers-SE., Inc.*, 2014 WL 3900389 (W.D. Va. Aug. 11, 2014) (noting that block billing is "acceptable *unless* it prevents the court from assessing reasonableness," and applying a reduction in fees only where nearly all entries were block-billed, and the block billing frequently resulted in lengthy, repetitive entries (emphasis in original)); *Wyatt v. Owens*,  2018 WL 10613184, at *11 (W.D. Va. Jan. 23, 2018) (reducing fee award where block billing was routine, often resulted in lengthy entries, and precluded the court from credibly engaging in a reasonableness analysis).

For similar reasons, the Court is not persuaded that the "bills for some of the tasks are manifestly excessive and should be rejected," as Plaintiff contends.  Mem. Opp'n 7.  Simply, the Court is satisfied that the cumulative hours billed for each entry are reasonable in light of the various tasks listed therein.  *See Maryland Elec. Indus. Health Fund v. MESCO, Inc.*, 2014 WL 4660813, at *6 (D. Md. Sept. 16, 2014) (noting that block billing is permissible where the entries are "reasonably descriptive and the tasks all pertain to the case or claims for which attorneys' fees are sought").  Moreover, the billed tasks are all recoverable, further negating the need for any reduction in award.  *See Rossum v. Baltimore Cty., Maryland*, 2017 WL 4270435, at *3 (D. Md. Sept. 26, 2017) ("Block billing would only be inappropriate if one or more tasks performed by an individual attorney was not recoverable such that the [c]ourt could not discern the actual time charged for recoverable tasks.").

For these reasons, no reduction in fee award is warranted due to the block-billing practices of Defendant's counsel.

2. Subtraction of Fees for Unsuccessful Claims

The Court need not spend significant time on the latter half of this inquiry.  Here, Defendant excluded any legal fees incurred in the filing of her compulsory counterclaim, which was voluntarily dismissed following the Court's dismissal of the claims asserted against Defendant. Mem. Supp. 5.  This is the only dropped or otherwise "unsuccessful claim," as Defendant summarily prevailed in this matter via her Motion to Dismiss. *Id.*  Therefore, no further subtraction of fees is necessary.  *See Grissom*, 549 F.3d at 321.  For the same reason, no percentage adjustment is necessary to account for the degree of success achieved by Defendant.  Defendant prevailed outright and is entitled to the entirety of the fees sought.  *See id.*; *Route Triple Seven*, 127 F. Supp. 3d at 618.

3. Attorneys' Fees Summary

In sum, having weighed the relevant factors and considered whether any adjustments are necessary, the Court finds that Defendant's request for $227,257 in attorneys' fees is reasonable. Defendant's counsel expended a substantial amount of time and effort on this complex matter, charged reasonable rates, provided valuable services to the Defendant, and enlisted adequate safeguards to ensure their practice of block billing sufficiently detailed the time spent on various tasks.  Further, Defendant's unqualified success in this matter justifies a full, unadjusted award. Under such circumstances, the attorneys' fees sought are reasonable, and no reductions are warranted.

**C. Most of the Costs Sought by Defendant Are Recoverable**

Defendant seeks an additional total of $8,298.80 in taxable costs that were apparently incurred in this litigation.  *See* Mem. Supp. 13–14.  Plaintiff responds that certain of these costs

18

fall outside the "limited scope of taxable costs under 28 U.S.C. § 1920" and therefore argues that

Defendant is entitled to "no more than $2,462.85 in costs."  Mem. Opp'n 12, 15.

28 U.S.C. § 1920 sets out the recoverable taxable costs of litigation.  Specifically, "a judge

or clerk of any court of the United States may tax as costs the following:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded
> transcripts necessarily obtained for use in the case; (3) Fees and disbursements for
> printing and witnesses; (4) Fees for exemplification and the costs of making copies
> of any materials where the copies are necessarily obtained for use in the case; (5)
> Docket fees under section 1923 of this title; [and] (6) Compensation of court
> appointed experts, compensation of interpreters, and salaries, fees, expenses, and
> costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  Costs are presumptively awarded to the prevailing party, unless a federal statute

provides otherwise.  *See Williams v. Metro Life Ins. Co.*, 609 F.3d 622, 636 (4th Cir. 2010) (quoting

Fed. R. Civ. P. 54(d)(1)); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999).  That

said, the prevailing party "still bears the burden of showing that the requested costs are permitted

under § 1920."  *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 2015 WL 7283108, at *6 (E.D. Va.

Nov. 17, 2015).

Relying on the above, Defendant seeks an award of costs for the following expenses:

| DATE PAID | DESCRIPTION OF EXPENSE | COST |
|---|---|---|
| 5/19/2023 | Deposition transcript of Jayne W. Di Vincenzo | $1,099.25 |
| 5/30/2023 | Same-day cancelation fee for the deposition of Devin J. Garofalo | $250.00 |
| 5/30/2023 | Same-day cancelation fee for the deposition of Devin J. Garofalo | $280.00 |
| 5/31/2023 | Transcript of the 30(b)(6) deposition of Cambridge defendants | $2,435.95 |
| 6/12/2023 | Court reporter and transcript of the 30(b)(6) deposition of Colonial River | $2,833.60 |
| 6/13/2023 | Videographer fee for the 30(b)(6) deposition of Colonial River | $1,400.00 |
|  | **TOTAL:** | **$8,298.80** |

At the outset, the Court notes that Plaintiff does not contest Defendant's entitlement to costs for her own deposition transcript.  *See* Mem. Opp'n 12–15; Def.'s Reply Supp. Mot. Award Atty's' Fees & Costs ("Reply") 8, ECF No. 92.  Moreover, the Court is satisfied that Defendant has met her burden in establishing her entitlement to such a cost.  Defendant's deposition was obviously a necessary cost in this matter, and the cost of a deposition transcript is generally recoverable if such deposition was "reasonably necessary at the time of its taking."  *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987).  The remainder of the costs are, however, disputed.

1. Deposition Cancellation Fees

Beginning first with the cancellation fees, Defendant argues it is entitled to such costs because Plaintiff "refus[ed] to make Mr. Garofalo available for his properly noticed [individual] deposition, which [was] the subject of the Joint Motion Regarding Plaintiff's Request for Protective Order and Defendants' Opposition Thereto."  Mem. Supp. 15; *see also* Reply 9–10. Defendant notes that Mr. Garofalo's deposition was reasonably necessary because (1) the Court had not yet ruled on Plaintiff's Motion for a Protective Order, and (2) Mr. Garofalo's individual deposition was reasonably necessary in preparation for summary judgment and/or trial in this matter.  Reply 9.  In response, Plaintiff argues solely that such cancellation fees do not fall within the plain language of taxable costs under § 1920.  Mem. Opp'n 13.  On balance, the Court agrees with Defendant that these cancellation fees are indeed taxable costs.

The costs of a deposition should be awarded "when the taking of a deposition is reasonably necessary at the time of its taking."  *Jop v. City of Hampton*, 163 F.R.D. 486, 488 (E.D. Va. 1995); *see Francisco v. Verizon S., Inc.*, 272 F.R.D. 436, 444 (E.D. Va. 2011) (quoting *Jop*, 163 F.R.D. at 488).  In determining whether a deposition was "reasonably necessary at the time of its taking,"

courts "must be guided by [their] own understanding of the necessities of legal practice, applied to the facts and circumstances of the individual case." *Francisco*, 272 F.R.D. at 442. For a deposition to be deemed necessary, "it needs only to be relevant and material for . . . preparation in the litigation." *Id.* at 442–43. Finally, reimbursable deposition costs include all those costs "incident to the deposition." *Id.* at 444.

Here, the Court is satisfied that Defendant is entitled to recover the contested deposition cancellation fees. Preliminarily, Plaintiff is correct that deposition cancellation costs are not explicitly included in the language of § 1920. *See* Mem. Opp'n 13. However, the same is true for deposition costs more broadly, yet courts have nevertheless interpreted those to fall within the ambit of taxable costs under § 1920. *See Jop,* 163 F.R.D. at 488; *see Francisco*, 272 F.R.D. at 444. Further, given that reimbursable costs include all those "incident to the deposition," *Francisco*, 272 F.R.D. at 444, and that the cancelation fees arose from Mr. Garofalo's failure to appear for a properly noticed deposition, the Court has no issue finding that these cancelations fees are indeed reimbursable under § 1920. Finally, there appears to be no dispute that Mr. Garofalo's individual deposition was indeed "reasonably necessary" at the time Defendant sought to take it. *See Jop*, 163 F.R.D. at 488; *see* Mem. Supp. 14–15; Mem. Opp'n 12–13. The Court finds as much, particularly considering the low bar for establishing necessity, *see Francisco*, 272 F.R.D. at 442–43, and the relevance of Mr. Garofalo's testimony to various discovery-related motions. *See* Mem. Supp. 14; Reply 9–10.

2. <u>Cambridge Corporate Representative Deposition Fees</u>

Defendant next argues it is entitled to costs related to the deposition of the Cambridge Defendants' corporate representative. Mem. Supp. 14; Reply 11. Defendant contends that she was not required to have a cause of action against the Cambridge Defendants to "anticipate needing

a transcript of [this] testimony in order to prepare a proper defense."  Reply 11.  Instead, Defendant notes that Plaintiff alleged the existence of a conspiracy amongst Defendant and the Cambridge Defendants.  *Id.*  As such, Defendant posits that she "could reasonably anticipate needing the deposition transcript of her alleged co-conspirator to prepare a proper defense."  *Id.*  Plaintiff makes two arguments in response:  (1) "since [Defendant] did not assert a claim against Cambridge and Cambridge did not assert a claim against [Defendant], a transcript of Cambridge's corporate representative deposition was not necessary at this stage in the proceeding"; and (2) the associated "finance charge" for Defendant's "failure to remit [timely] payment . . . is not an allowable cost under § 1920.

Having considered the parties' respective arguments, the Court holds that Defendant is entitled to $2,214.50 related to the deposition of the Cambridge Defendants corporate representative.  On the one hand, Plaintiff is correct that the $221.45 "finance charge" stemming from Defendant's failure to timely remit payment is not an allowable cost under § 1920.  An avoidable cost such as this can hardly be considered a necessary, incidental cost of the deposition. *See Jop*, 163 F.R.D. at 488; *Francisco*, 272 F.R.D. at 444.  Conversely, the Court agrees that the deposition itself was in fact necessary, particularly given the conspiracy count lodged against both Defendant and the Cambridge Defendants.  *See Francisco*, 272 F.R.D. at 443.  It was not unreasonable for Defendant to assume she would need testimony from conspiracy co-defendants to mount a proper defense at trial.  *See id.* ("Defendant could not reasonably be expected to anticipate *every* manner in which the depositions might be used [and] who among the deponents [Plaintiff] might call to testify at trial . . . .  Accordingly, given such uncertainties, the costs of the depositions should be awarded to Defendant because . . . they were reasonably necessary for the defense of the litigation.").

22

Therefore, Defendant is entitled to the costs related to this deposition, minus the cost of the finance charge, which comes to $2,214.50.[10]

3. Colonial River Corporate Representative Deposition Fees

Lastly, Defendant argues she is entitled to various costs related to the deposition of Plaintiff's corporate representative. Mem. Supp. 14; Reply 9–11. Specifically, Defendant seeks $4,233.60, broken down as follows: $2,833.60 in transcript fees (which includes certain fees related to rough drafts and excerpts of the same), and $1,400.00 in videographer fees. Defendant argues such fees were necessary, in part because of Plaintiff's "litigious nature" and in part to prepare for various discovery- and briefing-related deadlines. *See* Mem. Supp. 14–15; Reply 9–11. In response, Plaintiff argues that the $2,833.60 fee for the transcript contains several "unnecessary items," including charges for a rough draft excerpt, complete rough draft, and an additional copy of the transcript. Mem. Opp'n 13. Plaintiff also argues the videographer fee is wholly unnecessary and unsupported by circuit caselaw. *See id.* at 14. The Court considers these contentions below.

*a. Videographer Fees*

Beginning with the challenged videographer fees, Plaintiff is correct that Defendant is not entitled to such costs. As the Fourth Circuit held in *Cherry v. Champion International*, 28 U.S.C. § 1920 implicitly permits taxation of the costs of videotaped depositions. *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448—49 (4th Cir. 1999). That said, in order to recover "the costs of *both* transcribing and videotaping [a party's] deposition," the party needs to show "that both costs were 'necessarily obtained for use in the case.'" *Id.* at 449 (quoting 28 U.S.C. § 1920). In turn,

---

[10] Indeed, such a finding is in line with Plaintiff's alternative argument, wherein Plaintiff contended that, at the very least, the finance charge should be excluded. *See* Mem. Opp'n 14 n.4 ("In the alternative, the Court should deny the $221.45 finance charge included in [Defendant's] request for the cost, and allow only $2,214.50.")

the concept of "necessity for use" generally requires a showing of an independent, legitimate use for both the transcription *and* the video recording before both sets of costs may be recovered.  *See id.* (citing *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997)).   This "connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial."  *Id.*  Applying this framework, the *Cherry* court explicitly held that a general claim that a videotaped deposition was necessary for a party "to enhance its chances of effectively impeaching" the opposing party did not sufficiently establish the necessity of such costs.  *Id.*; *see also Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 2015 WL 7283108, at *8–9 (E.D. Va. Nov. 17, 2015).

Here, Defendant makes essentially the same argument that the Fourth Circuit rejected in *Cherry*.  Specifically, Defendant argues that "[v]ideo impeachment evidence would have been critical to [Defendant's] strategy at trial . . . [because it] can allow for an efficient presentation in a courtroom . . . and is far more powerful than reading excerpts from a transcript."  Reply 10. Defendant makes the additional argument that she economically opted to "hold off on requesting finalization of the video for trial," making her request for such costs more reasonable.  However, regardless of the economy of such a decision, Defendant cannot escape the conclusion compelled by *Cherry*—that the videography costs here are unrecoverable, as Defendant lacks a sufficient independent, legitimate reason for having incurred such costs.

### b. Deposition Transcript Fees

Lastly, the Court turns to the deposition transcript fees, which include costs for (1) rough draft excerpts, (2) a complete rough draft, and—purportedly—(3) an additional copy of the transcript.  The Court finds that all these costs are recoverable.

Beginning with the rough draft and rough draft excerpts, Plaintiff makes a conclusory argument that the rough draft-related costs were unnecessary. *See* Mem. Opp'n 13. Defendant counters that a rough draft and rough draft excerpts were in fact necessary "for use by her expert prior to the defending parties' expert witness disclosure deadline and for summary judgment briefing," as well as the "deadlines in the Scheduling Order which fell within days of the deposition, including the expert disclosure deadline." Def.'s Reply 10–11. In fact, Defendant specifically notes that the rough draft—though she presumably means the excerpts, given the timing[11]—were used in preparing "the Supplement to the Joint Motion Regarding Plaintiff's Request for Protective Order . . . filed on May 30, 2023." Reply 11. Given this context, the Court agrees with Defendant that the rough draft-related costs are recoverable. Courts in this circuit have acknowledged that rough draft copies of transcripts may sometimes count as taxable costs, *see, e.g., Sines v. Kessler*, No. 3:17-CV-00072, 2023 WL 2388050, at *19 (W.D. Va. Mar. 7, 2023), and the circumstances here support such a finding. Given the impending deadlines and associated work referenced by Defendant, it was indeed reasonable and necessary for her to obtain both rough draft excerpts as well as a complete rough draft copy of the deposition transcript to ensure that she could adequately comply with such deadlines.

Finally, contrary to Plaintiff's assertion, a review of the relevant invoices reveals that Defendant neither requested nor received an *additional* copy of the deposition transcript at issue. *See* Mem. Supp. Ex. 8 ("Halasz Reporting & Video Invoices") 8, ECF No. 90-8; Reply 11. Instead, the invoice indicates that three items were provided to Defendant's counsel: (1) a rough draft excerpt sent via email; (2) a complete rough draft sent via email; and (3) a final transcript sent via

---

[11] It appears that the rough draft excerpts of this deposition were sent to Defendant on May 29, 2023, while the complete rough draft was not provided until June 1, 2023, Mem. Supp. Ex. 8 ("Halasz Reporting & Video Invoices") 8, ECF No. 90-8, suggesting Defendant likely ordered a full rough draft but in the interest of time was provided first with relevant excerpts for use in preparing the May 30, 2023 filing.

email. *Id.* While the line-item for the transcript itself is somewhat misleading—"323 pages of video depo original and copy reg. delivery"—it does not appear that any additional copy was actually ordered by or provided to Defendant's counsel. *Id.*; Reply 11. Moreover, a comparison of the cost of this transcript with the others obtained in this matter suggest that it was indeed a single copy. *Compare id.* at 8 *with id.* at 4, 7.[12] Therefore, no further reduction in costs is necessary to account for any purported additional, unnecessary copies of the deposition transcript.

4. Costs Summary

In sum, Defendant is entitled to $6,727.35 in costs, broken down as follows:

| DATE PAID | DESCRIPTION OF EXPENSE | COST |
|-----------|------------------------|------|
| 5/19/2023 | Deposition transcript of Jayne W. Di Vincenzo | $1,099.25 |
| 5/30/2023 | Same-day cancelation fee for the deposition of Devin J. Garofalo | $250.00 |
| 5/30/2023 | Same-day cancelation fee for the deposition of Devin J. Garofalo | $280.00 |
| 5/31/2023 | Transcript of the 30(b)(6) deposition of Cambridge defendants | $2214.50[13] |
| 6/12/2023 | Court reporter and transcript of the 30(b)(6) deposition of Colonial River | $2,883.60 |
|  | **TOTAL:** | **$6,727.35** |

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendant Di Vincenzo's Motion for an Award of Attorneys' Fees and Costs (ECF No. 89), as detailed above. An appropriate Order will accompany this Memorandum Opinion.

Richmond, Virginia                     /s/ *[signature]*
Date: January 5, 2024                  Roderick C. Young
                                       United States District Judge

---

[12] That is to say, the cost of the challenged invoice is comparable to the costs of the other deposition transcripts obtained in this matter, none of which mention or otherwise appear to include any additional copies.

[13] This number represents the overall $2435.95 fee, minus the $221.45 "finance charge."